IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INFRASTRUCTURE AND ENERGY
ALTERNATIVES, INC. on its own    :
behalf and as Plan Administrator
and Fiduciary of Infrastructure :
and Energy Alternatives, Inc.
Employee Benefit Plan            :

    v.                          :    Civil Action No. DKC 24-1268

                                 :

AXIM FRINGE SOLUTIONS GROUP,
LLC, et al.                      :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this Employee Retirement Income Security Act ("ERISA") case is the motion for default judgment filed by Infrastructure and Energy Alternatives, Inc. ("Plaintiff" or "IEA"). (ECF No. 23). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for default judgment will be denied and Plaintiff will be directed to show cause why the complaint should not be dismissed as to all defendants for failure to state a claim.

I.  **Background**

    A.  **Factual Background**

IEA is a corporation that "is the sponsor, Plan Administrator, and fiduciary of the Infrastructure and Energy Alternatives, Inc. Employee Benefit Plan ('Plan')." (ECF No. 1 ¶¶ 1-2). "The Plan provides health benefits to participants and beneficiaries of the

Plan" and is governed by ERISA. (*Id.* ¶ 2). Axim Fringe Solutions Group ("Axim") is a limited liability company that provides fiduciary and administrative services to ERISA plans. (*Id.* ¶¶ 3–4). Axim's Chief Executive Officer is James Campbell, who owns 98% of Axim, and its Director of Compliance Accounting is Melissa McManes. (*Id.* ¶¶ 5–6).

On January 1, 2021, IEA entered into a Provider/Client Agreement with Axim in which Axim agreed to "provide[] fiduciary and administrative services to IEA and the Plan." (*Id.* ¶¶ 4, 10). As part of its services, "Axim created and controlled trust accounts to which IEA forwarded contributions that were intended for the purpose of paying benefits and necessary expenses of the Plan." (*Id.* ¶ 4). Mr. Campbell, as CEO of Axim, "was the named Trustee to the IEA Employee Welfare Benefit Plans Trust Agreement ('Trust Agreement'), the Axim Fringe Solutions Master Trust Agreement ('Axim Master Trust Agreement'), and the sub-trust accounts that held the Plan assets." (*Id.* ¶ 5). Among Axim's other services, it administered benefits from the trust accounts, received and paid monthly insurance premium invoices, provided accounting and recordkeeping services, and assumed "responsibility for protecting the Plan assets in the Trust." (*Id.* ¶ 16).

IEA alleges that it "properly and timely funded the Trust" at all times "so that proper claims and expenses of the Plan could be

timely paid from Plan assets." (*Id.* ¶ 18). Sometime later, IEA alleges, it "discovered and determined that Axim was not timely and properly paying claims and other legitimate expenses of the Plan." (*Id.* ¶ 19). Instead, Axim, Mr. Campbell, and Ms. McManes (collectively, "Defendants") allegedly "misappropriated, improperly commingled, and/or transferred assets of the Plan to Defendants, other companies owned by [Mr.] Campbell, and/or sub-trusts for employers unrelated to IEA." (*Id.* ¶ 22). In doing so, they allegedly "failed to properly apply and segregate [IEA's] contributions to the Trust and sub-trusts established for the Plan." (*Id.* ¶ 21). All the while, IEA posits, "Defendants actively concealed and misled IEA about their improper and illegal actions when responding to questions from IEA or the Plan's vendors." (*Id.* ¶ 26). Put simply, Axim, Mr. Campbell, and Ms. McManes "bill[ed] IEA for [their] services" but allegedly "failed to perform their obligations as Trustee." (*Id.* ¶ 20).

Relatedly, the Secretary of Labor filed a complaint against Axim, Mr. Campbell, and Ms. McManes in this district on February 20, 2024, alleging in much greater detail similar misconduct by Defendants involving dozens of ERISA plans. Complaint, *Su v. Axim Fringe Sols. Grp., LLC*, No. 24-cv-483-LKG (D.Md. Feb. 20, 2024),

ECF No. 1.[1]  IEA states that it learned of the Secretary's lawsuit before filing its complaint, (ECF No. 1 ¶ 23), but it is not clear whether IEA learned of Defendants' alleged misconduct via the Secretary's lawsuit.

On March 27, 2024, IEA informed Axim that it would terminate Axim's services "based on Axim's service failures, gross negligence, and fraud." (*Id.* ¶ 27).  On April 11, 2024, the termination took effect. (*Id.*).  IEA asserts that it "need[ed] to separately fund payments of $1,882,178.86 due under the Plan." (*Id.* ¶ 28).  IEA instructed Defendants "to transfer the remaining amounts in the IEA Trust to a new account established for the Plan," but Defendants did not do so.  (*Id.*).

**B.  Procedural Background**

Plaintiff filed its complaint against Axim, Mr. Campbell, and Ms. McManes on April 30, 2024. (ECF No. 1).  The complaint contains four counts: breach of contract (Count I), injunctive relief to prevent further dissipation of Plan assets (Count II), breach of fiduciary duty and injunctive relief under ERISA § 502(a)(2) and § 502(a)(3), 29 U.S.C. § 1132(a)(2) and (a)(3) (Count III), and fraudulent misrepresentation (Count IV).  These counts cover a period of alleged misconduct from January 2021 to April 2024.  Axim

---

[1] For detailed factual allegations about Defendants' actions as ERISA fiduciaries, see the cited complaint.

and Mr. Campbell were served on May 20 and May 21, 2024, respectively.[2] (ECF Nos. 9; 11).

On May 23, 2024, another judge in this district entered a consent judgment in the Secretary of Labor's separate suit against Axim, Mr. Campbell, and Ms. McManes covering their ERISA violations for the period of December 2015 to June 2022 ("DOL Consent Judgment"). Consent Judgment and Order at 1-2, *Axim*, No. 24-cv-483-LKG (D.Md. May 23, 2024), ECF No. 20. The court ordered the defendants in that case to pay over $4 million into a distribution account and appointed Receivership Management, Inc. ("RMI") as an independent fiduciary. *Id.* at 3-4. The court ordered RMI to exercise "plenary authority . . . over the liquidation and distribution of the assets of the Distribution Account and all master trust and [sub-trust] accounts maintained and held by Defendants," *id.* at 4, granting RMI "exclusive control" over the sub-trust accounts, *id.* at 6. One such sub-trust account was that of Plaintiff IEA. Consent Judgment and Order, Exhibit 2 at 3,

---

[2] It is not clear whether Plaintiff complied with its obligation under ERISA to serve its complaint on the Secretary of Labor and the Secretary of the Treasury by certified mail. 29 U.S.C. § 1132(h). At least one court in this district has concluded that a failure to comply with ERISA's service requirements constitutes a jurisdictional defect. *Arthur v. Trojan Horse, Ltd.*, No. 12-cv-3156-WDQ, 2013 WL 4854138, at *3-4 (D.Md. Sep. 10, 2013) (granting defendants' motion to dismiss for lack of subject matter jurisdiction because there was "no indication that the [p]laintiffs complied with the service requirement of § 1132(h)").

*Axim*, No. 24-cv-483-LKG, ECF No. 20-2.  The court instructed RMI to establish a "notice and claims submission procedure" for Axim's clients, including Plaintiff, such that RMI could "[f]acilitate the transfer of the custody of any assets of the sub-trust accounts . . . to the respective [clients]."  Consent Judgment and Order at 5, *Axim*, No. 24-cv-483-LKG, ECF No. 20.[3]

Returning to this case, both Axim and Mr. Campbell executed waivers of service on June 7, 2024, meaning their answers were due on August 6, 2024.  (ECF Nos. 12; 13).  After Axim and Mr. Campbell failed to file their answers with the court by August 6, Plaintiff

---

[3] The existence of the consent judgment does not preclude litigation of the portion of this suit that overlaps with the time period covered under the consent judgment, namely January 2021 to June 2022.  Under the doctrine of res judicata, "[t]here must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017) (quoting *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004)).  IEA's suit is not precluded in part by the consent judgment in the Secretary's suit because IEA is not in privity with the Secretary.  *Picardi v. Chi. Truck Drivers*, 581 F.Supp. 794, 797 (N.D.Ill. 1983) (holding that the Secretary of Labor's prior ERISA suit did not preclude the private plaintiff's subsequent ERISA suit; the parties lacked privity because the Secretary represented the public interest, distinct from the private litigant's private interest); *cf. Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 340 (4th Cir. 2007) (holding the converse due to lack of privity).  Even so, were this court to reach the remedy stage, it would be obligated to tailor the equitable relief it provides to ensure no windfall accrues to Plaintiff.  *See Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (holding that equitable relief can be no "broader than necessary to provide complete relief to each plaintiff").

filed a status report on September 13, 2024, explaining that Mr. Campbell had sent an answer, purportedly on behalf of Axim,[4] to Plaintiff directly on August 6. (ECF No. 17, at 1). Plaintiff attached the answer to its status report. (ECF No. 17-1). On November 1, 2024, Plaintiff moved for clerk's entry of default against Axim and Mr. Campbell, (ECF No. 18), which the clerk granted as to both Axim and Mr. Campbell on February 26, 2025, (ECF No. 19).

On July 23, 2025, Plaintiff moved for default judgment against Axim and Mr. Campbell.[5] (ECF No. 23). The following day, the court directed Plaintiff to brief how this case relates to *Su v.*

---

[4] While not on the docket, the clerk received an email purportedly from Mr. Campbell through the court's EDSS system on August 6, 2024. The document was not accepted for filing because the attachment lacked an original, ink signature. Even if Mr. Campbell had provided a signed document, it still would have been improper on behalf of Axim. As an entity, Axim must be represented by counsel to file documents in this case. Local Rule 101.1.a. Mr. Campbell is not an attorney. (*See* ECF No. 23-2, at 3 (affidavit by Plaintiff's counsel declaring that "[Mr.] Campbell is not an attorney"); *id.* at 6 (email from Mr. Campbell stating "I am not an attorney")). Therefore, he cannot file documents on Axim's behalf. The "answer" sent to plaintiff's counsel also is not signed and, in any event, does not constitute filing with the court. *See Bauer Compressors, Inc. v. Three Rivers Crane, Inc.*, No. 18-cv-282, 2018 WL 4655731, at *3 (E.D.Va. Sep. 27, 2018); Fed.R.Civ.P. 5(d)(1).

[5] Ms. McManes filed an answer in this case. (ECF No. 15). No scheduling order has yet been entered, and no further proceedings have taken place. In light of the resolution of this motion, however, Plaintiff will be directed to show cause why the complaint should not be dismissed in its entirety for failure to state a claim.

*Axim Fringe Sols. Grp., LLC*, No. 24-cv-483-LKG, and whether this case should be handled by the presiding judge in that case. (ECF No. 24). Plaintiff filed a response to that order on August 6, 2025. (ECF No. 25). Neither Mr. Campbell nor Axim has responded to Plaintiff's motion for default judgment.

## II. Standard of Review

Default judgment is "appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Fed.R.Civ.P. 55(a), which governs default judgments, states "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." If a party fails to plead or defend, then the clerk may enter a default judgment, provided that "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation." Fed.R.Civ.P. 55(b)(1). In all other cases, the party must apply to the court for a default judgment. Fed.R.Civ.P. 55(b)(2). Plaintiff seeks a default judgment for a specific amount of fund payments that Defendants failed to pay, but whether to enter judgment in Plaintiff's favor is within the court's discretion. *Hanover Ins. Co. v. Persaud Cos.*, No. 13-cv-1472-GJH,

2015 WL 4496448, at *2 (D.Md. July 22, 2015) (citing *Lawbaugh*, 359 F.Supp.2d at 421). Plaintiff also seeks injunctive relief.

On a motion for default judgment, "the well-[pleaded] allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Lawbaugh*, 359 F.Supp.2d at 422 (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)); *see also* Fed.R.Civ.P. 8(b)(6). By his default, a defendant "admits the plaintiff's well-pleaded allegations of fact." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Even so, a default does not constitute "an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Id.* (quoting *Nishimatsu*, 515 F.2d at 1206). Instead, the court must "determine[] whether the unchallenged factual allegations constitute a legitimate cause of action" by "apply[ing] the *Iqbal/Twombly* pleading standard." *United States v. Kachikwu*, No. 21-cv-1546-GJH, 2023 WL 155248, at *2 (D.Md. Jan. 11, 2023) (citing *Agora Fin., LLC v. Samler*, 725 F.Supp.2d 491, 494 (D.Md. 2010); *Balt. Line Handling Co. v. Brophy*, 771 F.Supp.2d 531, 544 (D.Md. 2011)). "Under that standard, a complaint fails to state a claim entitling the pleader to relief if the complaint offers only 'labels and conclusions' or 'naked assertions devoid

of further factual enhancement.'" *Id.* (quoting *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)).

## III. Analysis

Plaintiff pursues claims for breach of contract (Count I),
injunctive relief (Count II), breach of ERISA fiduciary duty (Count
III), and fraudulent misrepresentation (Count IV).  Conclusory
allegations doom Plaintiff's claims in Counts I, III, and IV, and
Plaintiff's request for injunctive relief in Count II is moot
because Axim and Mr. Campbell no longer control the relevant
accounts.  The court will deny the motion for default judgment on
all counts.

### A.   Counts I & IV: Breach of Contract and Fraudulent Misrepresentation

Plaintiff pursues claims for breach of contract and
fraudulent misrepresentation in Counts I and IV, respectively.  As
to its breach of contract claim, Plaintiff entered three
agreements—the Provider/Client Agreement, Trust Agreement, and the
Axim Master Trust Agreement—with Axim and Mr. Campbell.  (ECF No.
1 ¶ 31).  Plaintiff argues that it states a claim for breach of
contract because it alleges that Axim and Mr. Campbell "(1) did
not timely and properly pay claims and other legitimate expenses
of the Plan, (2) billed IEA for services which they did not
properly perform, (3) failed to properly apply and segregate the
contributions to the Trust and sub-trusts established for the Plan,

10

and (4) misappropriated, improperly commingled, and/or transferred assets of the Plan to [themselves], other companies owned by Campbell, and/or sub-trusts for employers unrelated to IEA." (ECF No. 23-1, at 4 (citing ECF No. 1 ¶¶ 19-22)). As a result of Axim and Mr. Campbell's alleged breaches, Plaintiff had to fund payments of $1,882,178.86 "due under the Plan." (*Id.* (citing ECF No. 1 ¶¶ 28, 33)). Plaintiff did not attach copies of the agreements in question to its complaint nor to its motion for default judgment. Relatedly, Plaintiff's fraudulent misrepresentation claim rests on the assertion that Axim and Mr. Campbell "made repeated false statements and intentionally misrepresented material facts to IEA and IEA's vendors about performance of Defendants['] duties and payment of the Plan's obligations," which they allegedly knew were false and on which Plaintiff's reliance was allegedly reasonable. (ECF No. 1 ¶¶ 49-50, 52; *see also* ECF No. 23-1, at 6). Before reaching the plausibility of the breach of contract and fraud claims, it is necessary to assess whether ERISA completely preempts them.

### 1. ERISA Preemption

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). There are two forms of preemption under ERISA, complete and conflict, captured respectively in ERISA §

502, 29 U.S.C. § 1132, and ERISA § 514, 29 U.S.C. § 1144.[6] Complete preemption occurs when Congress "so completely [preempts] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Darcangelo v. Verizon Comm'cns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)).    In other words, the doctrine of complete preemption automatically converts state claims into federal claims. *Id.* "The Supreme Court [of the United States] has determined that ERISA's civil enforcement provision, § 502(a) (29 U.S.C. § 1132(a)), completely preempts state law claims that come within its scope and converts these state claims into federal claims under § 502." *Id.* (citing *Taylor*, 481 U.S. at 65–66).    State claims that do not fall within the scope of § 502, however, may still be subject to conflict preemption.    Under conflict preemption, "state laws that conflict with federal laws are preempted, and preemption is asserted as 'a federal defense to the plaintiff's suit.'" *Id.* at 186–87 (quoting *Taylor*, 481 U.S. at 63).    Conflict preemption in the ERISA context stems from ERISA § 514, which mandates that "state laws are superseded insofar as they 'relate to' an ERISA plan." *Id.* at 187 (quoting 29 U.S.C. § 1144(a)).    Accordingly, ERISA § 514 operates

---

[6] "For ERISA preemption purposes, 'State law' includes both statutory and common law." *Custer v. Sweeney*, 89 F.3d 1156, 1166 (4th Cir. 1996) (citing 29 U.S.C. § 1144(c)(1)).

as an affirmative defense to state claims relating to an ERISA plan that are not within the scope of § 502. *See Pinney v. Nokia, Inc.*, 402 F.3d 430, 449 (4th Cir. 2005); *Marks v. Watters*, 322 F.3d 316, 323 (4th Cir. 2003). In short, ERISA § 502 automatically preempts all state claims within its scope and converts them into federal § 502 claims, whereas ERISA § 514 provides a conflict preemption defense to all other claims related to ERISA plans not within the scope of § 502. Of course, Axim and Mr. Campbell have not raised a conflict preemption defense in this case. Only § 502 complete preemption is at issue.

The Fourth Circuit follows a three-prong test to determine if a particular state law claim is completely preempted by ERISA § 502:

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must "fall[] within the scope of an ERISA provision that [it] can enforce via § 502(a)"; and (3) the claim must not be capable of resolution "without an interpretation of the contract governed by federal law," i.e., an ERISA-governed employee benefit plan.

*Prince v. Sears Holdings Corp.*, 848 F.3d 173, 177 (4th Cir. 2017) (alterations in original) (quoting *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir. 2003)). Given the factually thin complaint and the fact that the agreements themselves are not before the court, there are substantial questions about all three prongs that the court cannot resolve on

13

the current record.  Ultimately, however, the claims fail in both their state and federal forms.  Accordingly, resolving whether the state claims are completely preempted is unnecessary to dispose of the present motion.

### 2.    Breach of Contract

If the breach of contract claim is not completely preempted, then "[t]o state a claim for breach of contract under Maryland law, the plaintiff must establish that 'the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'" *Timilon Corp. v. Empowerment Just. Ctr. Corp.*, 738 F.Supp.3d 669, 684 (D.Md. 2024) (quoting *Reamer v. State Auto. Mut. Ins. Co.*, 556 F.Supp.3d 544, 550 (D.Md. 2021), *aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022)).  To meet the first element, the plaintiff must plead sufficient facts related to "offer, acceptance, and consideration" to support the legal conclusion that a valid and enforceable contract existed.  *See B-Line Med., LLC v. Interactive Digit. Sols.*, 209 Md.App. 22, 46 (2012) (citing *Peer v. First Fed. Sav. & Loan Ass'n*, 273 Md. 610, 614 (1975)).  The complaint supplies sufficient facts to conclude that the Provider/Client Agreement constituted an enforceable contract because it alleges that IEA agreed to pay Axim in exchange for Axim's provision of at least ten services related to plan administration.  (ECF No. 1 ¶¶ 11, 16, 20).  As to the Trust

Agreement and the Axim Master Trust Agreement, however, the complaint offers no facts supporting the legal conclusion that they "are valid and enforceable contracts and agreements." (*Id.* ¶ 31). The court does not consider such legal conclusions, and the breach of contract claim regarding the Trust Agreement and Axim Master Trust Agreement is insufficient to warrant default judgment. To meet the second element, the complaint must allege sufficient facts to support the legal conclusion that Axim and Mr. Campbell materially breached the three agreements. On this front, the complaint offers no more than bare legal conclusions as to the Provider/Client Agreement, Trust Agreement, and Axim Master Trust Agreement. (*See id.* ¶¶ 19-22, 32). Consequently, Plaintiff's failure to allege breach adequately bars default judgment on its breach of contract claim regarding the Provider/Client Agreement, and additionally bars default judgment on its breach of contract claim regarding the Trust Agreement and Axim Master Trust Agreement.

If Plaintiff's breach of contract claim *is* completely preempted by ERISA, the claim is recast as an ERISA § 502 claim. There are two relevant claims an ERISA fiduciary can bring under § 502: breach of fiduciary duty under § 502(a)(2), and injunctive relief against "any act or practice which violates any provision of [ERISA] or the terms of the plan, or. . . [to] redress such

violations" under § 502(a)(3).  Whether the allegation is that Axim and Mr. Campbell breached a fiduciary duty, a provision of ERISA, or the terms of the plan, the conclusory nature of Plaintiff's allegations renders the claim deficient.

### 3.    Fraudulent Misrepresentation

Plaintiff's fraudulent misrepresentation claim fares no better.  If Plaintiff's fraudulent misrepresentation claim is not completely preempted, then Plaintiff must plead sufficient facts that "(1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation." *Exxon Mobil Corp. v. Albright*, 433 Md. 303, 334 (2013) (quoting *Hoffman v. Stamper*, 385 Md. 1, 28 (2005)). The only allegations related to Axim's and Mr. Campbell's representations state that they "made repeated false statements and intentionally misrepresented material facts to IEA and IEA's vendors about performance of [their] duties and payment of the Plan's obligations."  (ECF No. 1 ¶ 49).  Falsity, intentional misrepresentation, and materiality constitute legal conclusions

16

that need not be credited.  Without further factual allegations regarding the content of these statements, the court cannot begin to assess whether the representations were false, much less the remaining elements that flow from there.  Stripping away the legal conclusions and threadbare recitals of the elements, there is no plausible claim for fraudulent misrepresentation, and default judgment is not warranted.

If the fraudulent misrepresentation claim is completely preempted, recasting it under ERISA similarly fails.  Again, whether the claim becomes a breach of fiduciary duty claim under ERISA § 502(a)(2) or a claim to enjoin or redress violations of ERISA or the plan under ERISA § 502(a)(3), the deficiency of Plaintiff's allegations remains.

In short, both the breach of contract and fraudulent misrepresentation claims, whether in their state or ERISA form, are far too conclusory to meet Plaintiff's burden at the default judgment stage of stating a plausible claim for relief.

**B.   Count III: ERISA Claims**

Next, Plaintiff alleges that Axim and Mr. Campbell breached their fiduciary duty under ERISA § 502(a)(2).  Plaintiff further contends that Axim and Mr. Campbell's breach of fiduciary duty entitles it to relief under ERISA § 502(a)(3) as well because the breach constitutes a violation of ERISA § 404(a), codified at 29

U.S.C. § 1104(a), and § 502(a)(3) creates a cause of action for relief for any violation of an ERISA provision. (*See* ECF No. 1 ¶¶ 40, 42). The breach of fiduciary duty is the crux of both claims.

"To state a claim for breach of fiduciary duty under ERISA, the plaintiff must allege: (1) that the defendant was a fiduciary, (2) who was acting within his fiduciary capacity, and (3) breached his duty." *Cuthie v. Fleet Rsrv. Ass'n*, 743 F.Supp.2d 486, 494 (D.Md. 2010) (citing *In re Morgan Stanley ERISA Litig.*, 696 F.Supp.2d 345, 353 (S.D.N.Y. 2009)). Even assuming the first two elements are met, however, Plaintiff has not furnished the necessary factual content beyond conclusory allegations and threadbare recitals to discern a plausible breach by Axim and Mr. Campbell. As discussed in the previous subsection, alleging that Axim and Mr. Campbell "misappropriate[ed] Plan assets, fail[ed] to hold the Plan assets in trust, and fail[ed] to prudently and loyally discharge their fiduciary duties," (ECF No. 1 ¶ 44), is simply not enough. On the current record, Plaintiff is not entitled to default judgment on its § 502(a)(2) and § 502(a)(3) claims.

### C. Count II: Injunctive Relief

Finally, Plaintiff seeks to enjoin Axim and Mr. Campbell's "further dissipation of the Plan assets." (ECF Nos. 1 ¶ 37; 23-1, at 7). As Plaintiff recognizes, injunctive relief is "not . .

18

. a standalone claim," (ECF No. 23-1, at 3 n.1), but rather a prayer for relief that depends on an underlying cause of action. *Doe v. Salisbury Univ.*, 123 F.Supp.3d 748, 770 (D.Md. 2015). A request for injunctive relief becomes moot, however, when "there is no effective relief available in federal court that [the plaintiff] has not already received." *SAS Inst.*, 874 F.3d at 389 (alteration in original) (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)).

Here, even if Plaintiff stated a plausible underlying claim for relief, an injunction to prevent Axim and Mr. Campbell's further dissipation of Plan assets is moot because Plaintiff has already effectively received such relief. In the DOL Consent Judgment, the court ordered that RMI take control and custody over Axim's accounts, including the IEA sub-trust account with the IEA Plan assets. *See* Consent Judgment and Order at 4, 6, *Axim*, No. 24-cv-483-LKG, ECF No. 20; Consent Judgment and Order, Exhibit 2 at 3, *Axim*, No. 24-cv-483-LKG, ECF No. 20-2. In its first status report in that case, RMI informed the court that it had "fulfilled all its duties" related to the assumption of control over Axim's accounts. *See* Status Report of the Court-Appointed Independent Fiduciary at 1-2, *Axim*, No. 24-cv-483-LKG (D.Md. Sep. 26, 2024),

ECF No. 21.[7]  Furthermore, RMI reported that it had "returned all of the[] funds" remaining in the seized Axim accounts "to the respective employer clients." *Id.* at 3.  Accordingly, it is not possible for Axim and Mr. Campbell to further dissipate the Plan assets because they no longer control them.  Plaintiff's request for injunctive relief to prevent further dissipation of Plan assets is thus moot.

*    *    *

Although the Secretary of Labor's complaint alleged detailed, serious misconduct by Axim and Mr. Campbell and resulted in a consent judgment, that does not excuse Plaintiff's burden in this case to allege specific facts regarding Axim and Mr. Campbell's misconduct vis-à-vis IEA.  Plaintiff will be directed to show cause why the complaint should not be dismissed for failure to state a claim as to all defendants.  That effort may take the form of a motion for leave to file an amended complaint.[8]

---

[7] It is appropriate for the court to "take judicial notice of its own records in another case if 'the prior case is brought into the pleadings in the case on trial or where the two cases represent related litigation.'" *Cason v. Holder*, 815 F.Supp.2d 918, 922 n.8 (D.Md. 2011) (quoting *Thurman v. Robinson*, 51 F.3d 268, 1995 WL 133350, at *2 (4th Cir. Mar. 28, 1995) (unpublished table decision)).  Plaintiff brought the Department of Labor's lawsuit against Axim and Mr. Campbell into the pleadings of the case, (ECF No. 1 ¶¶ 23-24), and that lawsuit is related to this case because both hinge on the same misconduct by Axim.

[8] When moving for default judgment, "[a] plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for default judgment will be denied.  A separate order will follow.

_____
                /s/
DEBORAH K. CHASANOW
United States District Judge

---

plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence." *United States v. Moschonas*, No. 19-cv-332-DKC, 2020 WL 6545884, at *2 (D.Md. Nov. 6, 2020) (quoting *United States v. Vardoulakis*, No. 07-cv-3341-WDQ, 2010 WL 5137653, at *3 (D.Md. Nov. 9, 2010)).  In the current record, Plaintiff provides no documentary evidence to support its damages figure, nor does the affidavit it attaches to its motion for default judgment discuss the damages figure.